ELISHA A. PACKER & another *vs.* JACOB E. LOCKMAN & others.

Suffolk.    March 12. — April 6, 1874.  COLT & ENDICOTT, JJ., absent.

In an action of tort for the conversion of coal which the plaintiffs alleged they were induced to sell through the fraud and deceit of one of the defendants in representing to their agent that the coal was for C. F. C. & Co., who were responsible parties, which fraud was participated in by the other defendants, the plaintiffs must prove that they relied on and were in fact misled by the representations. For this purpose, and because they formed inseparable parts of the transaction, the orders from the agent to his principals to forward the coal, the bills of lading accompanying it when forwarded, the invoices sent in the usual course of business, and the transcripts thereof delivered by the agent to the defendant making the representations, are competent and admissible in evidence. The bills of lading and transcripts of invoices containing the name of C. F. C. & Co., and delivered to the defendants, are also competent to show knowledge on the part of the defendants that the plaintiffs supposed they were selling to C. F. C. & Co.

If evidence which is admissible for any purpose, is admitted, and it is incompetent upon a particular branch of the case, and no specific exception is taken or ruling asked for, the general exception to its admission will be overruled.

In an action by a seller to recover damages sustained by means of a sale induced by the fraud of the purchaser's agent, evidence that the purchaser afterwards sold the coal for less than the price at which the seller sold is admissible as tending to show knowledge on the purchaser's part of the fraud and participation in it.

TORT in the nature of trover brought by Elisha A. Packer and Daniel Packer, against Jacob E. Lockman, W. H. Love, H. E. Hayward and L. S. Boyer, the three last named being members of the firm of Love, Hayward & Co., for the conversion of two cargoes of coal, with a count in contract on an account annexed, both counts being for the same cause of action. Trial in the Superior Court before *Lord,* J., who, after a verdict for the plaintiffs, allowed the following bill of exceptions :

" The plaintiffs introduced evidence tending to show that they were miners and shippers of coal in New York ; that S. O. Little, of Boston, was their agent to receive and transmit to them orders for coal, which were filled if approved by them, and to receive the consignee's notes therefor ; that the defendant, Lockman, who was a coal broker and buyer, in Boston, asked Little to ship to ' Clark of Waltham,' (not giving Clark's first name or initials,) two cargoes of coal, to which Little assented, agreeing to sell at the market price, less ten per cent., to Lockman ; that Little then gave Lockman a memorandum of sale, a copy of which is in the mar-

gin marked A ; * that Little, to get this order filled by plaintiffs, sent them a letter, a copy of which is in the margin marked B ; † that on the next·day Lockman requested of Little a change in the size of one cargo, from ⅔ stove and ⅓ egg, to ⅓ stove and ⅔ egg, whereupon he sent another letter to plaintiffs, a copy of which is in the margin marked C ; ‡ that plaintiffs, on receiving, and in compliance with said letters, shipped the coal upon bills of lading, copies of which are in the margin marked D §

---

### * A.

AUGUST 20, 1872.

Sold to C. F. Clark, of Waltham, Wilkesbarre coal, through J. E. Lockman, Boston, about 250 tons broken.

About 250 tons stove and egg — ⅓ egg and ⅔ stove.

At $3.85 for broken and egg, F. O. C.

At $4.25 for stove.

Less 10 c. per ton comm. to J. E. Lockman.        S. O. LITTLE.

### † B.

BOSTON, August 20, 1872.

E. A. PACKER & Co., New York : Ship to Fitchburg R. R., Boston, for Chas. F. Clark & Co., of Waltham, Mass.,

About 250 tons broken, $3.75.

About 250 tons, ⅓ egg, and ⅔ stove, $3.75, $4.15.

Yours truly,        S. O. LITTLE.

### ‡ C.

BOSTON, August 21, 1872.

E. A. PACKER & Co., New York : We sent you an order yesterday, for Chas. F. Clark & Co., Waltham. The parties called to-day and wish ⅓ stove and ⅔ egg shipped, instead of ⅓ egg and ⅔ stove, as sent. So the order reads ·

250 tons broken.

250 tons ⅓ stove and ⅔ egg.

Yours truly,        S. O. LITTLE.

        Per G. A. MORIARTY.

### § D.

No. 499.  Shipped by E. A. Packer & Co., in good order, on board the good sch. called the Clara Sawyer, of Tremont, whereof ——— is master for this present voyage, now lying in the port of South Amboy, and bound for Waltham, Mass., via B. & F. R. R., Boston, two hundred and forty-one tons, of 2,240 .bs., Wilkesbarre coal, which I promise to deliver at the aforesaid port of Boston, in like good order, (the dangers of the sea only excepted,) unto Chas. F. Clark & Co., or their assigns, he or they paying freight for the same, at the rate of $1.80 per ton, 3 cts. for bridge demurrage; 8 cts. per ton after three days from the day of reporting.

and E,* and sent said bills of lading, with invoices, copies of which are in the margin, marked F † and G,‡ to Little, who gave the

---

In witness whereof, the master or purser of the said vessel has affirmed to three bills of lading, all of this tenor and date, one of which being accomplished the others to stand void.

Dated at South Amboy, this 27th day of August, 1872.

| | |
|---|---|
| .241 tons in the hold. | ADVANCED FOR |
| 241 egg. | Trimming, $16.87 |
| 241 total. | Total, $16.87 |

J. N. BRANSCOM.

\* E.

No. 519. Shipped by E. A. Packer & Co., in good order, on board the good brig called the W. R. Sawyer, of Boston, whereof —— is master for this present voyage, and now lying in the port of South Amboy, and bound for Waltham, via B. & F. R. R., Boston, two hundred and fifty-two (252) tons, of 2,240 lbs., Wilkesbarre coal, which I promise to deliver at the aforesaid port of Boston, in like good order, (the dangers of the sea only excepted,) unto Chas. F. Clark & Co., or their assigns, he or they paying freight for the same, at the rate of $1.83 per ton, and 8 cts. per ton after three lay days from the day of reporting.

In witness whereof, the master or purser of the said vessel has affirmed to three bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

Dated at South Amboy, this 6th day of September, 1872.

| | |
|---|---|
| About 7 tons on deck. | 169 egg. |
| ADVANCED FOR | 83 stove. |
| Trimming, $32.76 | 252 total. |
| Total, $32.76 | |

J. E. SAWYER.

† F.

NEW YORK, August 27, 1872.

Chas. F. Clark & Co., bought of E. A. Packer & Co., W.-Barre coal, from Amboy, per schr. Clara Sawyer,

| | | |
|---|---|---|
| Broken, 241 tons, @ $3.75, net | . . . . | $903.75 |
| Advanced . . . . . . . . | | 16.87 |
| | | $920.62 |
| Insurance at 1% . . . . . . . | | 9.04 |
| | | $929.66 |

‡ G.

NEW YORK, September 6, 1872.

C. F. Clark & Co., bought of E. A. Packer & Co., W.-Barre coal, from Amboy, per sch. W. R. Sawyer,

bills of lading, and transcript of the invoices, copies of which are in the margin, marked H * and I,† to Lockman. The said letters, bills of lading and invoices were read in evidence, the defendants objecting, there being no other evidence that defendants had knowledge of the contents of the letters than is herein related.

" The plaintiffs also introduced evidence tending to show that Lockman, on receipt of the bills of lading, gave them, unindorsed,

| | |
|---|---:|
| Egg, 169 tons, @ $3.75 . . . . . . | $633.75 |
| Stove, 83 tons, @ $4.15 . . . . . . | 344.45 |
| Advanced . . . . . . . . | 32.76 |
| Insurance at 1% . . . . . . . | 9.78 |
| | $1,020.74 |

* H.

BOSTON, August 27, 1872.

C. F. Clark & Co., Waltham, Mass., bought of E. A. Packer & Co., miners and shippers of coal, S. O. Little, agent, No. 22 Kilby Street. Shipment from South Amboy, per sch. Clara Sawyer, Wilkesbarre coal,

| | |
|---|---:|
| 241 tons broken, @ $3.85 . . . . . | $927.85 |
| Advanced freight . . . . . . | 16.87 |
| Insurance, 1% . . . . . . . | 9.04 |
| | $953.76 |
| Commission to J. E. Lockman . . . | 24.10 |
| | $929.66 |
| Int. 3 mos. and 3 days, and stamps . . . | 17.31 |
| | $946.97 |

Settled by note of F. F. Clark, of August 27, three months.

E. A. PACKER & Co.
By S. O. LITTLE.

† I.

BOSTON, September 6, 1872.

C. F. Clark & Co., Waltham, Mass., bought of E. A. Packer & Co., miners and shippers of coal, S. O. Little, agent, No. 22 Kilby Street. Shipment from South Amboy, per sch. W. R. Sawyer, Wilkesbarre coal,

| | |
|---|---:|
| 169 tons egg, @ $3.85 . . . . . . | $650.65 |
| 83 tons stove, @ 4.25 . . . . . | 352.75 |
| Advance freight . . . . . . | 32.76 |
| Insurance 1% . . . . . . | 10.00 |
| | $1,046.16 |
| Com. to J. E. Lockman . . . . . | 25.20 |
| | $1,020.96 |
| Int. 3 mos., 3 days, and stamps . . . . | 18.50 |
| | $1,039.46 |

to the defendants, Love, Hayward & Co., who received the coal on arrival in Boston, and sold it. Also, that in about two weeks after the arrival of the coal, Little requested of Lockman the consignee's notes for the coal; that Lockman, after some delay, represented that there was a discount of 35 cents per ton on the coal, which he had allowed, and then tendered a note of F. F. Clark, dated Aug. 27, 1872, for $946.97, in settlement of the cargo of the Clara Sawyer, and asked the allowance of a discount of 35 cents a ton on the cargo of the W. R. Sawyer, as that which he had been obliged to allow; that Little referred the matter of the discount to F. T. Robinson, who had come to Boston on behalf of the plaintiffs to accelerate the delivery of the consignee's notes for the coal; that Little remarked to Lockman that C. F., and not F. F., were the initials of the consignee, and Little testified as follows: that Lockman told him (Little) that F. F. Clark was the man, instead of C. F. Clark. 'I knew there was one Clark in Waltham who was in business, and one who was not, and from our conversation — I can't recall what it was, now — I accepted the note of F. F. Clark, and receipted the bill, (as shown on the copy F, hereto annexed,) supposing he was the man in business in Waltham.' Also, that Lockman represented to said Robinson that he had been obliged to allow a discount of 35 cents a ton on the cargo of the W. R. Sawyer, and offered another note of F. F. Clark, dated September 6, 1872, for $951.37, in settlement; that Robinson said he had exceeded his authority as a broker, and declined to receive the note; that he (Robinson) then informed the plaintiffs that Lockman offered Mr. Clark's note, of Waltham, for the price of the cargo, less a discount of 35 cents a ton, and, under instructions thereupon received from plaintiffs, received the note, gave a receipt for it, a copy of which is in the margin, marked K,* informing Lockman he would be held responsible for the balance.

---

\* K.

Received from J. E. Lockman & Co., note dated Sept. 6th, at 3 mos., for nine hundred and fifty-one $\frac{37}{100}$ dollars ($951.37), drawn by Frederick F Clark, on account of cargo coal, per sch. W. R. Sawyer, leaving a balance of $88.97 more or less.

E. A. PACKER & Co.

E. A. O. E.          Per F. T. ROBINSON.

OCTOBER 11, 1872.

The plaintiffs' counsel asked the witness (Robinson) what said instructions were which he received from the plaintiffs, to which the defendants objected, and the answer was admitted, as follows : that they did not propose to accept 35 cents per ton off. The notes were dishonored at maturity. The plaintiffs also offered evidence tending to show that F. F. Clark was not in business, and had been for a long time insolvent at the time of these transactions ; that C. F. Clark was then in business as a coal dealer, in Waltham, in good credit, under the style of Chas. F. Clark & Co., and the only coal dealer named Clark there ; and that he never requested Lockman to buy coal for him, and did not know of the transaction herein related ; that defendants, Love, Hayward & Co., having an old note for $1863.63, of F. F. Clark's, which they knew to be worthless, had asked Lockman if he would sell them some coal for it, whereupon Lockman said he would, and got the coal as related ; that when Lockman gave the bills of lading to them, he requested them to get the note changed into two — one dated Aug. 27, 1872, for $946.97, and one dated Sept. 6, 1872, for $951.37 — whereupon they procured F. F. Clark to substitute the two notes first named for the one they held, and that it was the usage, known to Love, Hayward & Co., for purchasers of cargoes of coal to give their notes corresponding in dates with the bills of lading and amounts with the invoices thereof.

" The plaintiffs introduced evidence, the defendants objecting, tending to show that Love, Hayward & Co. sold the cargo of the W. R. Sawyer for $3.75 a ton for the egg, and $4.10 a ton for the stove, and that of the Clara Sawyer for $3.42 a ton, that the coal was of good quality, and that the market value of egg and broken coal was the same.

" The defendants introduced evidence tending to show that Love, Hayward & Co. bought the coal of Lockman and paid partly in the notes of F. F. Clark, and the balance in money, and that Lockman bought the coal in his own name, and on his own account, for Love, Hayward & Co., of Little ; that he asked Little if he would sell him the coal and take in payment the notes of F. F. Clark, of Waltham, on three months, unindorsed ; that after some days Little said that he had made inquiries and would do so, whereupon he gave Little the order, and directed the coal

to be shipped to himself; that Little said, owing to some difficulty which Lockman and the plaintiffs had had, he was afraid they would not ship to him, and asked as a favor that he might ship to C. F. Clark & Co., of Waltham, and that it should make no difference, and he thereupon consented, and that it was so shipped, and that when the coal arrived it was stopped at Boston in accordance with the understanding, and that he delivered it to Love, Hayward & Co., who had arranged with him to give F. F. Clark's notes for the coal, and that a discount of 25 cents a ton was allowed to the purchaser of the cargo of the Clara Sawyer, because it was egg size, which he did not want.

" The plaintiffs contended that the coal was procured by means of a fraudulent conspiracy between the defendants, and that question was submitted to the jury.

" To the admission of said letters, bills of lading, invoices, and evidence, admitted against their objections, the defendants excepted."

*R. Lund*, for the defendants. 1. The main questions that went to the jury were, whether Lockman gave Little the name of F. F. Clark, of Waltham, or only the name of Clark, without the initials, and the other discrepancies between the testimony of Little and Lockman. To support the testimony of Little, that the name of F. F. Clark was not given him by Lockman, the plaintiffs were allowed, against defendants' objection, to put in the letters, marked " B " and " C," from Little to the plaintiffs, of which the defendants had no knowledge at all; said letters making mention of C. F. Clark & Co. of Waltham. This was the same as allowing the plaintiffs to use the declarations of their agent to support his testimony, which cannot be allowed. *Hunt* v. *Roylance*, 11 Cush. 117. If the testimony of Lockman as to what took place between himself and Little was correct, then there was no fraud practised by any one on Little. Little denied the statements of Lockman, as shown by the case, and introduced the letters and bills of lading to support his testimony. They were admitted generally, and went to the jury. The plaintiffs' counsel argued then, as under a general admission he had the right to do, that they supported the statements of Little on the stand, and the jury so considered them.

If the name of F. F. Clark was given to Little by Lockman,

and time given to examine his credit, and Little, after some days, reported to him that he had made inquiries and would sell on F. F. Clark's note, and did send forward the coal, there was no fraud on the part of the defendants, and if Little did not correctly inform the plaintiffs, their action should be against him and not against these defendants, or any of them.

2. It is not claimed that Love, Hayward & Co. ever directly had anything to do with the plaintiffs or their agent. The evidence, uncontradicted, was that they bought the coal of Lockman, upon his agreeing to take F. F. Clark's note, that when the coal arrived they settled and gave him the notes as far as they went, and the balance in money. That he was not acting as broker but as seller. But it is claimed that they entered into a conspiracy with Lockman to get rid of the notes. And for the purpose of showing such a conspiracy, the plaintiffs were allowed to show that they sold the egg coal for a less price than the stove coal, and that the market value of both kinds was the same, and this without showing what the market value was. This had no tendency to show such a conspiracy, and should have been excluded. A large part of it was coal not ordered and not wanted, and on that account they claimed and were allowed a discount. Their customers would not take it. But it prejudiced the jury. Besides, upon looking at the invoices hereto annexed, marked " G " and " I," it will be seen that the egg and stove coal were invoiced at different prices. The stove coal in each bill forty-five cents the highest, which is a larger difference than they made in selling the first lot by the W. R. Sawyer, which came according to the order they gave to Lockman.

*T. L. Livermore,* for the plaintiffs, cited *Spooner* v. *Holmes,* 102 Mass. 503 ; *Lewis* v. *Manly,* 2 Yeates, 200 ; *Jackson* v. *Anderson,* 4 Taunt. 24, 29 ; *Buffington* v. *Curtis,* 15 Mass. 528 ; *Allen* v. *Williams,* 12 Pick. 297 ; *Chandler* v. *Sprague,* 5 Met. 306 ; *Michigan State Bank* v. *Gardner,* 15 Gray, 362.

WELLS, J. The plaintiffs allege that they were induced to sell and deliver two cargoes of coal, supposing that they were making the sale to, and upon the credit of C. F. Clark & Co., of Waltham, who were responsible parties ; that they were misled into this supposition by the deceit and fraud of the defendant Lockman, who thereby obtained control and possession of the coal, and de-

livered it to the other defendants, who knew of and participated in the fraud upon the plaintiffs. To maintain the action upon this ground it was necessary for them to prove, not only the deceit and fraud of Lockman, but also that they relied on and were in fact misled by it, in the sale and delivery of the coal. For this purpose, as well as because they formed inseparable parts of the transactions of sale and delivery, the orders from Little to his principals to forward the coal, the bills of lading accompanying it when forwarded, the invoices sent in the usual course of business, and the transcripts thereof delivered by Little to Lockman were competent and admissible in evidence. The bills of lading and transcripts were also competent to show that Lockman was informed, before disposing finally of the coal, and the other defendants when they received it, that the plaintiffs did suppose they were selling to C. F. Clark & Co., of Waltham. The only question raised by the exception is of the admissibility of the evidence.

The objection argued here as to its competency upon the other branch of the issue, to wit, the misrepresentations and fraud of Lockman, does not appear to have been made at the trial. No ruling was asked for to limit the effect of the evidence ; or at least, no exception taken to any ruling given or refused in that respect. The objection to the admission of the evidence must fail if it was admissible for any purpose.

The question of admissibility is not changed by the testimony on the part of the defendants tending to show another reason assigned by Little for ordering the coal in the name of C. F. Clark & Co. As already suggested, it was a question of the admissibility and not of the effect of the evidence.

For like reasons the evidence of the price at which Love, Hayward & Co. sold the coal was admissible. Their mode of dealing with it might tend to show that they were aware of and participated in the fraud by which it was obtained. Whether it did so or not was for the jury to consider.

The admission of the answer of the plaintiffs, " that they did not propose to accept 35 cents per ton off," in reply to an inquiry for instructions in regard to Lockman's proposal for such an abatement, is not good ground of exception ; and that point has not been pressed at the argument.          *Exceptions overruled.*